UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
UNITED STATES OF AMERICA,         :
                                  :
          Plaintiff,              :   Civil No. 3:19-cv-1531 (AWT)
                                  :
              v.                  :
                                  :
FAITH DORIO,                      :
                                  :
          Defendant.              :
------------------------------ x
```

<u>RULING ON MOTION TO DISMISS</u>

The United States of America (the "United States") commenced the instant action on behalf of the Department of Veterans Affairs (the "VA") against defendant and counterclaimant Faith Dorio. The United States alleges that Dorio is indebted to the VA in the amount of $59,913.25 because she failed to comply with the terms of a scholarship agreement she entered into with the VA. Dorio has filed counterclaims in which she concedes that she owes the principal amount of the scholarship funds she was given, but asserts five counts against the United States based on its imposition of fees, penalties, and interest above the principal amount. The United States moves to dismiss the counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, its motion is being granted.

I.    **FACTUAL ALLEGATIONS**

For the purposes of deciding this motion, the court takes as true the following allegations in the counterclaims.

On April 18, 2011, Dorio, a VA registered nurse, entered into the VA's Employee Incentive Scholarship Program (the "EISP"). The EISP was established by Congress as a subset of the VA's Health Professionals Educational Assistance Program (the "Educational Assistance Program") to assist the Veterans Health Administration ("VHA") in recruiting and retaining qualified health professionals. Through the legislative authority of the Educational Assistance Program, codified at 38 U.S.C. §§ 7601 et seq., and the EISP, codified at 38 U.S.C. §§ 7671-7675, the VA created the National Nursing Education Initiative (the "NNEI"), which awards scholarships specifically to VA registered nurses seeking baccalaureate and advanced nursing degrees from an authorized, accredited education program. In exchange, the scholarship recipient promises to serve at least a three-year period of obligated service as a full-time registered nurse in a VHA facility selected by the Secretary of Veterans Affairs (the "Secretary"). Under 38 U.S.C. § 7675(c), the failure of a scholarship recipient to complete the obligated period of service "for any reason" constitutes a breach of the scholarship agreement, and entitles the United States to recover an amount equal to three times the amount of the scholarship funds given to the recipient

plus interest, discounted for any amount of time actually served by the recipient[1]. The service or payment obligation is waivable by the Secretary "whenever noncompliance by the participant is due to circumstances beyond the control of the participant or whenever the Secretary determines that the waiver . . . is in the best interest of the United States." 38 U.S.C. § 7634(b).

Upon entering the EISP, Dorio executed the NNEI Scholarship Program Agreement (the "Agreement") which included the statutorily mandated terms set forth above. See 38 U.S.C. § 7672(e). In doing so, she committed herself to three years of obligated service,

---

[1] 38 U.S.C. § 7675(c) provides:

> **(c) Liability during period of obligated service. (1)** Except as provided in subsection (d), if a participant in the Program breaches the agreement by failing for any reason to complete such participant's period of obligated service, the United States shall be entitled to recover from the participant an amount determined in accordance with the following formula:
>
> $$A=3\Phi\ (t-s/t)$$
>
> **(2)** In such formula:
>   (A) "A" is the amount the United States is entitled to recover.
>   (B) "Φ" is the sum of—
>     (i) the amounts paid under this subchapter to or on behalf of the participant; and
>     (ii) the interest on such amounts which would be payable if at the time the amounts were paid they were loans bearing interest at the maximum legal prevailing rate[.]
>   (C) "t" is the total number of months in the participant's period of obligated service, including any additional period of obligated service in accordance with section 7673(c)(2) of this title.
>   (D) "s" is the number of months of such period served by the participant in accordance with section 7673[.]

having received $19,205 for her tuition and related education expenses.

Dorio alleges that as a further inducement for her to enter into the Agreement and to remain as an employee of the VHA, the VA also promised her that she would receive an annual retention payment of $12,000. Dorio alleges that the retention payments were "required to meet her living expenses," as the compensation offered at VHA facilities was "insufficient." Countercl. at ¶¶ 28, 15. The retention payments were to be included in Dorio's paycheck as soon as the Secretary placed her with a VHA facility and were to be deposited annually thereafter.

Dorio commenced an accredited nursing program on June 27, 2011. After completing the program on March 3, 2013, she was placed with the VA HealthCare System in West Haven, Connecticut (the "VACT") to complete her service obligation. She served approximately eight months of her three-year obligation at the VACT. During that time, she received the promised retention payments. Dorio alleges that thereafter, however, the VA unilaterally eliminated her retention payments without notice, and Dorio's efforts to get them reinstated were unsuccessful. Dorio contends that she was forced to leave her employment with the VA because, without the retention payments, she was unable to pay her living expenses. She tendered her resignation on October 10, 2013, and it became effective on November 1, 2013.

-4-

Dorio later received a VA Bill of Collection Worksheet stating that she owed the VA $47,569.87 because of her breach of the Agreement. At that time, Dorio requested a waiver of her service obligation from the Secretary on the grounds of extreme hardship. In her request, she offered to repay the VA $20,000 -- an amount in excess of the scholarship funds she received but much less than the treble damages to which the VA claims it is entitled. The Secretary denied her waiver request.

On September 27, 2019, the United States instituted the instant action to recover the debt owed by Dorio, which totaled $59,913.25 as of the date of filing; interest continues to accrue. On December 6, 2019, Dorio filed counterclaims in five counts seeking to enjoin the United States from enforcing and collecting the debt against her in any amount greater than $14,937.24 – that is, the amount of scholarship funds she received discounted for the amount of time she served.

Dorio claims, in the First Count, that the VA breached the Agreement with Dorio by failing to provide the promised retention payments and, in the Second Count, that the VA intentionally misrepresented that the retention payments would be incorporated into the Agreement and included in her compensation so long as she remained an employee of the VA. In the alternative, Dorio claims, in the Third Count, that the VA negligently misrepresented that the retention payments would be made, and, in the Fourth Count,

that the VA is estopped from collecting the debt from her because
of its misrepresentations. In the Fifth Count, Dorio claims that
the United States violated her rights to equal protection under
the Fourteenth Amendment[2], Article I, § 20 of the Connecticut
Constitution, and 42 U.S.C. § 1983.

## II.  LEGAL STANDARDS

### A. Rule 12(b)(6)

When deciding a motion to dismiss a counterclaim under Rule
12(b)(6), the court must accept as true all factual allegations in
the counterclaim and must draw inferences in a light most favorable
to the counterclaim plaintiff. Scheuer v. Rhodes, 416 U.S. 232,
236 (1974). Although a counterclaim "does not need detailed factual
allegations, a [counterclaim] plaintiff's obligation to provide
the 'grounds' of his 'entitle[ment] to relief' requires more than
labels and conclusions, and a formulaic recitation of the elements
of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550
U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286
(1986)) (on a motion to dismiss, courts "are not bound to accept
as true a legal conclusion couched as a factual allegation"). "Nor
does a [counterclaim] suffice if it tenders naked assertions devoid
of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations

---

[2] Dorio intended to plead this claim as a Fifth Amendment violation.

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [counterclaim] are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). However, the counterclaim plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the [counterclaim], not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the [counterclaim] plaintiff will prevail, but whether the [counterclaim] plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice

may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the [counterclaim] is nevertheless 'integral' to the [counterclaim] and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral . . . 'where the [counterclaim] relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### B. Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecomm., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "In a 12(b)(1) motion to dismiss counterclaims, the nonmoving party receives the same protections as it would defending against a motion brought pursuant to 12(b)(6)." New York v. Gen. Elec. Co., No. 1:14-CV-747, 2015 WL 12748007, at *4 (N.D.N.Y. Sep. 29, 2015); see, e.g., Rehab. Support Serv., Inc. v. City of Albany, New York, 1:14-CV-499, 2015 WL 4067066, at *2 (N.D.N.Y. July 2, 2015) ("The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is substantively identical to the 12(b)(6) standard."). Thus, the

court "must accept as true all material factual allegations in the [counterclaim], but [must] not . . . draw inferences from the complaint favorable to [the counterclaim] plaintiff[.]" <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004). However, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." <u>Aurechione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d 635, 638 (2d Cir. 2005).

## III. DISCUSSION

### A. <u>First, Second, Third, and Fourth Counts</u>

In moving to dismiss the First, Second, Third, and Fourth Counts, the United States argues that Dorio has failed as to each claim to set forth an independent jurisdictional basis and that each claim is barred by the doctrine of sovereign immunity. The court agrees.

It is well-established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." <u>Liranzo v. United States</u>, 690 F.3d 78, 84 (2d Cir. 2012) (citing <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980)). "[J]urisdiction for a suit against the United States . . . whether it be in the form of an original action or a set-off or a counterclaim . . . does not exist

unless there is specific congressional authority for it." <u>United States v. Forma</u>, 42 F.3d 759, 764 (2d Cir. 1994).

Contrary to the foregoing, Dorio argues that "[b]y initiating this original action, the Government has waived its right to sovereign immunity with respect to compulsory counterclaims." Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Dismiss ("Opp'n") at 5, ECF No. 20. This argument is without merit because "courts have firmly rejected th[e] theory of a general waiver [of sovereign immunity] by implication." 6 Charles A. Wright et al., Federal Practice and Procedure § 1427, at 194–95 (2d ed. 1990). <u>See, e.g.</u>, <u>Presidential Gardens Assocs. v. United States ex rel. Sec. of Hous. and Urban Dev.</u>, 175 F.3d 132, 140 (2d Cir. 1999) ("[A]ncillary jurisdiction is almost always present with regard to cross-claims and counterclaims. But sovereign immunity still bars such claims from being brought against the government absent a waiver[.]") (internal citations omitted); <u>Forma</u>, 42 F.3d at 764 ("[I]t is clear that the United States, by filing [an] original complaint . . . does not thereby consent to be sued on a counterclaim based upon a cause of action as to which it had not otherwise given its consent to be sued.") (internal quotations and citations omitted). Federal Rule of Civil Procedure 13 provides that Rule 13 "do[es] not expand the right to assert a counterclaim -- or to claim a credit -- against the United States or a United States officer or agency." Fed. R. Civ. P. 13(d).

Dorio also contends that her claims are not barred because they fall within the recoupment-counterclaim exception to sovereign immunity. See, e.g., Opp'n at 7 ("The Government is not immune from a compulsory counterclaim which seeks equitable recoupment.").[3] "Despite sovereign immunity, 'a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim.'" Forma, 42 F.3d at 764 (quoting United States v. United States Fid. & Guar. Co., 309 U.S. 506, 511 (1940)). Equitable recoupment "permits a party sued by the United States to seek to recover or 'recoup damages . . . so as to reduce or defeat the government's claim . . . [even] though no affirmative judgment . . . can be rendered against the United States." United States v. Livecchi, 605 F.Supp.2d 437, 450 (W.D.N.Y. 2009), aff'd, 711 F.3d 345 (2d Cir. 2013) (quoting Forma, 42 F.3d at 765). Claims that seek affirmative relief against the United States, however, remain barred by sovereign immunity because "it has long been absolutely clear that the [recoupment] exception does not permit any affirmative recovery against the United States on a

---

[3] Dorio pled recoupment in her answer to the Complaint:

RIGHT OF RECOUPMENT

To the extent that the Defendant is liable to the Plaintiff's in any amounts, those amounts are offset, in whole or in part, by the amount of harm which the Plaintiff has caused the Defendant by virtue of Plaintiff's conduct, as set forth in the Affirmative Defenses and Counterclaims included herein.

Answer at 2, ECF No. 9.

counterclaim that lacks an independent jurisdictional basis." Forma, 42 F.3d at 765. See also United States v. Agnew, 423 F.2d 513, 514 (9th Cir. 1970) ("The filing of a suit in the name of the United States does not amount to a waiver of sovereign immunity subjecting the United States to an affirmative adverse judgment on a counterclaim filed by the defendant. Although a counterclaim may be asserted against a sovereign by way of set off or recoupment to defeat or diminish the sovereign's recovery, no affirmative relief may be given against a sovereign in the absence of consent.").

Dorio contends that each of her counterclaims sounds in recoupment and the United States has therefore waived sovereign immunity with respect to those claims by bringing this action. "To assert a claim against the United States in recoupment, a party's counterclaim must: (1) arise out of the same transaction or occurrence, (2) seek relief of the same form or nature as that of the original claim, and (3) seek relief not in excess of that which the sovereign seeks." United States v. Buckingham Coal Co., No. 2:11-cv-383, 2013 WL 1818611, *5 (S.D. Ohio Apr. 29, 2013) (citing Frederick v. United States, 386 F.2d 481, 488 (5th Cir. 1967)).

With respect to the first requirement, courts examining recoupment claims have employed the "same transaction or occurrence" test used for compulsory counterclaims under Rule 13(a) because compulsory counterclaims also arise from the same transaction or occurrence as the original claim. Id. (citing

cases). In determining whether a counterclaim is compulsory under Rule 13(a), the court must consider "whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotations omitted). Factors indicative of a compulsory counterclaim include "(1) [the] identity of facts between [the] original claim and [the] counterclaim; (2) [the] mutuality of proof; [and] (3) [the] logical relationship between [the] original claim and [the] counterclaim." Federman v. Empire Fire and Marine Ins. Co., 597 F.2d 798, 812 (2d Cir. 1979).

It is apparent that Dorio's counterclaims arise from the same transaction or occurrence as the claim in the Complaint. Each claim relies on the same underlying facts as the claim in the Complaint, including her "obligation[s] with the VA under the NNEI program," "contest[s] [her] scholarship repayment obligation," and "challenge[s] the very same debt which the Government's original action seeks to collect." Opp'n at 6. Her counterclaims thus raise largely the same factual and legal issues as those raised by the Complaint and, if allowed to proceed, would rely on substantially the same evidence that would be used to support and/or refute the government's claims.

However, Dorio's counterclaims do not satisfy the second requirement for a claim in recoupment against the United States because, in each counterclaim asserted, Dorio seeks different relief, i.e., an injunction, than that sought by the United States. See Frederick, 386 F.2d at 488 ("[W]hen the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment . . . but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government."). In the instant action, the United States seeks to recover damages in the amount of $59,913.25 for Dorio's alleged breach of the Agreement, see Compl. at ¶¶ 6-8, whereas Dorio seeks a "permanent injunction enjoining and restraining the [United States] from . . . collect[ing the] debt against [her] . . . in an amount which exceeds $14,937.24." Countercl. at 13. While the injunctive relief Dorio seeks would, if granted, have the practical effect of reducing the government's damages, it is nevertheless an affirmative request for relief that is different in kind and nature from the relief sought by the United States. See, e.g., Quinault Indian Nation v. Pearson for Estate of Comenout, 868 F.3d 1093, 1100 (9th Cir. 2017) (counterclaims seeking injunctive and declaratory relief did not constitute claims for recoupment where sovereign tribe brought suit for damages); United States v. Ownbey Enterpr., Inc., 780 F. Supp. 817, 820 (N.D. Ga. 1991) ("A request

-14-

for an injunction . . . cannot be a recoupment claim because . . . recoupment is a defensive action which can only reduce a plaintiff's monetary award, while an injunction is an affirmative request for relief."); Woelffer v. Happy States of Am., Inc., 626 F.Supp. 499, 503 (N.D. Ill. 1985) (counterclaim for injunctive relief was not cognizable against state plaintiff that had requested only declaratory relief). Consequently, Dorio's counterclaims are barred by sovereign immunity.

Dorio acknowledges that her counterclaims seeking injunctive relief may not constitute proper claims in recoupment:

> Certain cases appear to suggest that in order to assert a counterclaim in recoupment against the Government, the counterclaim must seek relief of the same kind o[r] nature as the original complaint. Frederick, 386 F.2d at 488. Accordingly, at very best, the Government's Motion may be granted to the extent that it seeks to strike Dorio's prayers for relief seeking injunctive relief.

Opp'n at 8, n. 1. See also Opp'n at 2 ("[T]his Court cannot dismiss the Counterclaims but may, at best, strike those portions of Dorio's prayer for relief which request an injunction against the Government."). Dorio argues further that "each of the Counterclaims themselves set forth a legally sufficient basis through which [she] may recoup on a counterclaim an amount equal to the principal claim of the Government." Id. (internal quotations and citations omitted). But the court's ruling must be based on what Dorio actually pled in the counterclaims, not what she could have pled, and her failure to seek relief of the same form or

nature as that of the original claim means she has not pled a claim in recoupment. See Frederick, 386 F.2d at 488.[4]

Given the foregoing, the court lacks subject matter jurisdiction over the First, Second, Third, and Fourth Counts unless Dorio establishes other jurisdictional bases for these claims by a preponderance of the evidence. See Aurechione, 426 F.3d at 638. The only other basis for jurisdiction that Dorio proffers is the Federal Tort Claims Act ("FTCA"), 28 U.S. §§ 1346(b), 2671-2680. See Countercl. at ¶ 1 ("[T]his District Court has jurisdiction in any civil action on a tort claim against the United States of America in compliance with 28 U.S.C.A § 1346(b)(1)."). The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." Liranzo, 690 F.3d at 85 (internal citation omitted). It provides for jurisdiction in the federal district courts and waives the sovereign immunity of the United States for

> claims against the United States for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States if a private person, would be liable to the claimant in accordance

---

[4]Also, the court notes that Dorio asserts throughout the counterclaims that any form of non-injunctive relief, including damages, would be inadequate to redress her injury. See Countercl. at ¶¶ 43, 50, 53, 63, 69 ("Dorio has suffered irreparable harm for which there is no adequate remedy at law in the absence of injunctive relief . . .").

with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA is not, however, applicable to the counterclaims in the First, Second, Third, and Fourth Counts.

With respect to the First Count, claims against the United States for breach of contract are not cognizable under the FTCA. As the government states in its memorandum, these claims must be brought under the Tucker Act, 28 U.S.C. § 1346(a)(2), which provides that "[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of [] any . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States . . . not sounding in tort."[5]

---

[5] In addition, the Tucker Act and the FTCA do not provide a waiver of sovereign immunity for claims against the United States where a claimant, as here, seeks injunctive relief. See Lee v. Thornton, 420 U.S. 139, 140 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive . . . relief."); Cermak v. Babbitt, 234 F.3d 1356, 1361 (Fed. Cir. 2000), cert. denied, 532 U.S. 1021 (2001) ("Section 1346 [of the FTCA] . . . constitutes a waiver of sovereign immunity with respect to the prescribed claims. However, this waiver extends only to claims for monetary damages, and does not extend to claims for equitable relief."). See also Moon v. Takisaki, 501 F.2d 389, 390 (9th Cir. 1974);

With respect to the Second Count, which alleges intentional misrepresentation, and the Third Count, which alleges negligent misrepresentation, the FTCA does not apply to "[a]ny claim arising out of . . . misrepresentation." 28 U.S.C. § 2680(h). "This exception 'applies to claims arising out of negligent, as well as intentional, misrepresentation.'" Dorking Genetics v. United

---

Ostrer v. Aronwald, 434 F.Supp. 396, 399 (S.D.N.Y. 1977).

Moreover, the rights and obligations of participants in statutorily created scholarship programs are governed by statute, and contract-based claims and defenses regarding performance are therefore inapplicable. See, e.g., United States v. Vanhorn, 20 F.3d 104, 112 (4th Cir. 1994) ("[T]he [National Health Services Corps (NHSC)] scholarship program is an exercise by the federal government of its authority under the constitutionally-granted spending power to bring about a public policy goal[.] . . . [A]greements under this scheme are subject to statutory, not contractual, interpretation."); Rendleman v. Bowen, 860 F.2d 1537, 1542 (9th Cir. 1988) ("The only terms contained in the written agreement signed by a recipient are those required by the statute[.] . . . Thus, the obligations of the Secretary are to be based on statutory and not contractual principles."); United States v. Williams, 864 F. Supp. 305, 311 (E.D.N.Y. 1994) ("[T]he conditions imposed upon an NHSC scholarship arise by statutory directive and not by a negotiated agreement between the parties. As a result, statutory intent and not common law contract principles controls the interpretation of the conditions imposed on the scholarship recipient and the NHSC."); Dowell v. Dep't of Veterans' Affairs, No. 3:95CV-606-S, 1997 U.S. Dist. LEXIS 22777, *7-8 (W.D. Ky. 1997) ("[T]he VA's program is almost identical to the [NHSC scholarship] . . . . [C]ourts [interpreting the NHSC scholarship] have consistently held that the rights and obligations of participants are governed by statute, and that contract-based claims and defenses are ineffectual against the treble damages penalty."); Bell v. McDonald, 1:14CV188, 2015 U.S. Dist. LEXIS 70292, *14-15 (M.D.N.C.) ("Plaintiff is asking this court to relieve her of her obligation under the EISP, because Defendant made it impossible for her to meet her end of the bargain. Although Plaintiff asserts a potential defense in contract . . . the relationship between the scholar and the Government is statutory . . . [and] ordinary contract principles do not apply[.]") (internal quotation marks and citations omitted).

States, 76 F.3d 1261, 1264 (2d Cir. 1996) (quoting Block v. Neal, 469 U.S. 289, 295 (1983)).

In the Fourth Count, Dorio claims governmental estoppel on the basis of the same misrepresentations alleged in the Second and Third Counts. In the context of the FTCA, the Supreme Court has likened equitable estoppel claims against the government to claims of misrepresentation against the government. See Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 429-30 (1990). In Richmond, the Court addressed whether erroneous advice given by a government employee to a benefits claimant gave rise to an estoppel claim against the government for a monetary benefits payment that was not otherwise permitted by law. In rejecting the estoppel claim, the Court held that "judicial use of the equitable doctrine of estoppel cannot grant [a claimant] a money remedy that Congress has not authorized." Id. at 414-15. The Court found support for this conclusion in the FTCA:

> The provisions of the [FTCA] . . . also provide a strong indication of Congress' general approach to claims based on governmental misconduct, and suggest that it has considered and rejected the possibility of an additional exercise of its appropriation power to fund claims similar to those advanced here. The FTCA provides authorization in certain circumstances for suits by citizens against the Federal Government for torts committed by Government agents. Yet the FTCA by its terms excludes both negligent and intentional misrepresentation claims from its coverage. See § 2680(h). The claim brought by [the benefits claimant] is in practical effect one for misrepresentation, despite the application of the "estoppel" label. We would be most hesitant to create a judicial doctrine of estoppel

that would nullify a congressional decision against
authorization of the same class of claims.

Id. at 429-30.

### B. Fifth Count

The Fifth Count is a claim that the United States violated
Dorio's rights to equal protection under the Fourteenth Amendment,
Article I, § 20 of the Connecticut Constitution, and 42 U.S.C. §
1983 by denying her request for a waiver of her service obligation.
The United States argues that Dorio has failed to set forth an
appropriate jurisdictional basis or waiver of sovereign immunity
as to any of these equal protection claims. The court agrees.

With respect to Dorio's first proffered jurisdictional basis,
she asks the court to "construe the Fifth Count . . . as sounding
in denial of equal protection under the Fifth Amendment." Opp'n at
14. Because "[the Supreme Court's] approach to Fifth Amendment
equal protection claims has always been precisely the same as to
equal protection claims under the Fourteenth Amendment," this
claim is addressed as one under the Fifth Amendment. San Francisco
Arts & Athletics, Inc. v. United States Olympic Comm., 483 U.S.
522, 542 n. 21 (1987).

Dorio's equal protection claim is not a challenge to the NNEI
program's waiver process as a whole. Instead, she claims:

> 65. Upon information and belief, at all relevant times,
> the Plaintiff selectively treated Ms. Dorio differently,
> unfairly, unequally and less favorably in relation to
> other similarly situated individuals who had also

applied for the NNEI program, proceeded to be employed
by the VA and subsequently requested a waiver of service
obligation under the NNEI program due to a hardship.

66. Upon information and belief, the Plaintiff
selectively treated individuals who were either male or
younger in age than Ms. Dorio more favorably in relation
to such requests for a waiver of service obligation under
the NNEI program due to a hardship.

67. Upon information and belief, the Plaintiff was
improperly motivated by Ms. Dorio's age and gender in
its disparate, unequal and less favorable treatment of
her application for a waiver of service obligation under
the NNEI program due to a hardship.

Countercl. at ¶¶ 65-67.

To state an equal protection claim for selective enforcement,
a claimant must allege facts showing that: "(1) [the claimant],
compared with others similarly situated, was selectively treated;
and (2) that such selective treatment was based on 'impermissible
considerations such as race, religion, intent to inhibit or punish
the exercise of constitutional rights, or malicious or bad faith
intent to injure a person.'" Diesel v. Town of Lewisboro, 232 F.3d
92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606,
609-10 (2d Cir. 1980)).

The allegations in paragraphs 65, 66, and 67 lack "factual
content [to] allow[] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Iqbal,
556 U.S. at 678. Dorio provides no factual detail with respect to
the VA's decision to deny Dorio's waiver request. She simply
alleges that the denial occurred. See Countercl. at ¶ 34 ("The VA

denied Ms. Dorio's good faith waiver request and demanded that she pay the VA $47,569.87."). Moreover, the Fifth Count is devoid of facts about any other waiver requests that were granted or denied, such as the changed circumstances or grounds proffered in those waiver requests. Thus, there is no basis on which one could conclude that others similarly situated to Dorio were treated differently. Because the factual allegations are insufficient to support an inference of unequal treatment, the Fifth Amendment equal protection claim is dismissed.

Dorio does not address the other arguments made by the United States with respect to the Fifth Count —- namely, that the United States has not waived its sovereign immunity as to Article I, § 20 of the Connecticut Constitution and that 42 U.S.C. § 1983 is inapplicable to federal actors. As to the former, "[n]either this court nor the Connecticut Supreme court has ever recognized a private cause of action under Article First, § 20 of the Connecticut Constitution." Pierce v. Semple, No. 3:18-cv-1858 (KAD), 2018 WL 6173719, *6 (D. Conn. Nov. 26, 2018) (citing cases). As to the latter, the Supreme Court has repeatedly held that 42 U.S.C. § 1983 applies only to state, not federal, actors. See, e.g., Richardson v. McKnight, 521 U.S. 399, 403 (1997) ("[Section] 1983 . . . seeks to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights. . . . It imposes liability only where a person

-22-

acts under color of a state statute, ordinance, regulation, custom or usage.") (internal quotations and citations omitted). Accordingly, Dorio's equal protection claims asserted pursuant to Article First, § 20 of the Connecticut Constitution and 42 U.S.C. § 1983 are dismissed.

**IV.   CONCLUSION**

For the foregoing reasons, the United States' Motion to Dismiss Counterclaim (ECF No. [12]) is hereby GRANTED. The counterclaims in the First, Second, Third, Fourth, and Fifth Counts are hereby dismissed.

It is so ordered.

Dated this 2nd day of September 2020, at Hartford, Connecticut.


---
/s/ AWT
Alvin W. Thompson
United States District Judge